# EXHIBIT 1

KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
SROTHSCHILD@KHPSLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903

Attorneys for Plaintiff and Counter-Defendant Tom Whalley, Trustee of the Afeni Shakur Trust

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TOM WHALLEY, TRUSTEE OF THE AFENI SHAKUR TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>GHOBAD M. RAHIMINEDJAD aka GOBI M. RAHIMI, an individual, and DOES 1 through 10, inclusive,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. CV 2:17-3445 FMO (MRWx)<br>[*Hon. Fernando M. Olguin Presiding*]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT GHOBAD M. RAHIMINEDJAD SHOULD NOT BE HELD IN CONTEMPT; MEMORANDUM OF POINT AND AUTHORITIES; REQUEST FOR SANCTIONS**<br>[Fed.R.Civ.P. 70(d)]<br><br>[Filed concurrently with Declarations of Aaron Carey, Molly Monjauze and Stephen D. Rothschild]<br><br>Date:<br>Time:    10:00 a.m.<br>Ctrm:    6D<br><br>Action Commenced: May 5, 2017<br>Trial:                        October 16. 2018 |

TO THE ABOVE-ENTITLED COURT AND TO ALL PARTIES AND

3982.066/3030675.1

THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on _____, 2025, at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 6D of the above-entitled Court, located at 50 W. 1st Street, 6th Floor, Los Angeles, CA 90012, plaintiff and counter-defendant Tom Whalley, Trustee of the Afeni Shakur Trust (the "Trust"), will and hereby does move, pursuant to Fed.R.Civ.P. 70(d), for issuance of an order to show cause why defendant and counterclaimant Ghobad M. Rahiminedjad, aka Gobi M. Rahimi, ("Rahimi") should not be held in contempt of the judgment entered herein on March 17, 2020 [Doc 107].

The grounds for this motion are that Rahimi has violated the terms of the Judgment by retaining, attempting to sell, selling, and using to market commercially his own purported projects audio recordings, video recordings and photographs (collectively, "Material") that the Judgment required him to turn over to the Trust.

PLEASE TAKE FURTHER NOTICE that, at the above-referenced time and place, the Trust will and hereby does move for the following relief:

(1) an order that Rahimi identify under penalty of perjury and turn over to the Trust all remaining Material in his possession, custody or control;

(2) an order that Rahimi disclose, under penalty of perjury, the disposition of any Material he has sold, given away, or claims to have lost;

(3) an order that Rahimi disgorge to the Trust $42,000 that he received from the third party to whom he sold a cache of Material;

(4) an order that Rahimi account for and disgorge all other monies and other things he has received on account of sales of Material;

(5) an order that Rahimi account for and turn over to the Trust all monies that Rahimi received as a result of his use of Material to raise funding for his own projects and any other monies he has received for or as a result of his use of Material;

(6) an order that Rahimi pay the Trust $11,800.00 in attorney fees that it

incurred in connection with enforcing the settlement that resulted in the Judgment, and which the Court previously denied without prejudice and subject to its reconsideration if Rahimi engaged in "further efforts to delay or obstruct execution of the settlement agreement he entered into;"

(7) an order that Rahimi pay the Trust sanctions in the amount of at least $50,000 to compensate it for attorney fees it has incurred in connection with his violations of the Judgment and in connection with the instant motion and any other proceedings that may ensue; and

(8) an order for such other and further relief as the Court deems just and proper.

This motion will be based on this notice; the memorandum of points and authorities attached hereto; the declarations of Aaron Carey, Molly Monjuaze and Stephen D. Rothschild filed herewith; the Court's file herein; and such other matter as may be presented at the hearing on the motion.

Counsel for the Trust was unable to conduct a pre-filing conference in accordance with Local Rule 7-3 prior to the filing of the instant motion because the attorney who represented Rahimi prior to entry of the Judgment has advised the undersigned that he no longer represents Rahimi.

DATED: April    , 2025           KING, HOLMES, PATERNO & SORIANO, LLP

By: _____
STEPHEN D. ROTHSCHILD
Attorneys for Plaintiff and Counter-Defendant Tom Whalley, Trustee of the Afeni Shakur Trust

KING, HOLMES, PATERNO & SORIANO, LLP

3982.066/3030675.1                                    3

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS ....................................................................................2

    A. Procedural History .....................................................................................2

    B. Rahimi's Violations of the Judgment ........................................................5

        1. Rahimi's Post-Judgment Sale of Material to a Third Party ..............5

    C. Rahimi's Continuing Use of Material to Raise Funding for Personal Projects ........................................................................................7

    D. Rahimi's EBay.com Sales of Photographs Subject to the Judgment .....................................................................................................8

III. RAHIMI IS IN CONTEMPT OF THE JUDGMENT .........................................8

IV. CONCLUSION .....................................................................................................9

**TABLE OF AUTHORITIES**

| | Page(s) |
|---|---|
| **Federal Cases** | |
| *Armstrong v. Executive Office of the President, Office of Admin.*, 1 F3d 1274 (DC Cir. 1993) | 8 |
| *Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush*, 261 F3d 1037 (11th Cir. 2001) | 8 |
| **Federal Rules** | |
| Fed.R.Civ.P. 70(d) | 1, 2 |

King, Holmes, Paterno & Soriano, LLP

3982.066/3030675.1

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This motion is for an order to show cause why defendant and counterclaimant Ghobad M. Rahiminedjad, aka Gobi M. Rahimi ("Rahimi") should not be held in contempt for his open and continuing violations of this Court's March 17, 2020, Judgment herein (the "Judgment").

The Judgment required Rahimi to turn over to plaintiff and counter-defendant Tom Whalley, as trustee of the Estate of Afeni Shakur Trust's (the "Trust"), original photographs, audio-visual recordings and audio recordings (the "Material" and the "Photographs," "Videos" and "Audio Recordings") "of and relating to Tupac Shakur" in Rahimi's possession, custody or control.

Rahimi has engaged in a series of blatant violations of the Judgment by hoarding what may be hundreds of items that he was ordered to turn over to the Trust and selling and otherwise exploiting them for his own secret profit. Rahimi brazenly orchestrated a complicated, months-long scheme whereby he arranged to sell and sold multiple Shakur Audio Recordings, Video, and Photographs to a third party for $42,000.00. The Trust was able to recover that Material because only because the third party suspected that the Material might belong to the Trust and contacted the Trust about it. Most recently, Rahimi, through an eBay seller, attempted to sell Photographs that the Judgement required him to turn over to the Trust and the copyrights in which Rahimi assigned to the Trust pursuant to the Judgment. In addition, Rahimi has used Material in private promotional publications to raise funds for his own projects in violation of the Judgment.

The evidence of Rahimi's contempt for this Court's Judgment includes Rahimi's own emails, texts, photographs, and even an invoice that Rahimi prepared and sent to the third party who purchased Material from him reflecting Rahimi's sale of the Material collection of the $42,000 that the third party paid him at his request.

Accordingly, this Court should order Rahimi to show cause why he should not be held in contempt of the Judgment and, upon finding that Rahimi is in contempt of the judgment, order him to do the following:

(1) identify under penalty of perjury and turn over to the Trust all remaining Material in his possession, custody or control;

(2) disclose, under penalty of perjury, the disposition of any Material he has sold, given away, or claims to have lost;

(3) disgorge to the Trust the $42,000 that he received from the third party to whom he sold a large cache of Material;

(4) account for and disgorge to the Trust all monies that he has received as a result of his use of Material to raise funding for his own projects and any other monies he has received for or as a result of his use of Material;

(5) pay the Trust $11,800.00 in attorney fees that it incurred in connection with enforcing the settlement that resulted in the Judgment, and which the Court previously denied without prejudice and subject to its reconsideration if Rahimi engaged in "further efforts to delay or obstruct execution of the settlement agreement he entered into;" and

(6) pay the Trust sanctions in the amount of at least $50,000 to compensate it for the expenses it has incurred in connection with his violations of the Judgment and in connection with the instant motion and any other proceedings that may ensue, including the cost of the instant motion and all further proceedings thereon.

In addition, the Trust requests that the Court grant such other relief, and impose such further penalties, as it deems just and proper.

## II. STATEMENT OF FACTS

### A. Procedural History

The Trust filed this case in Los Angeles Superior Court on March 24, 2017, alleging causes of action for declaratory relief, breach of contract and an accounting. Rahimi removed the case to this Court. On June 19, 2017, Rahimi filed a corrected

answer and counterclaim, seeking a declaration that he was the sole owner of the Material. Rahimi moved for summary judgment on August 8, 2018, and the Court took the motion off calendar when the parties agreed to participate in a settlement conference.

On February 12, 2019, at the conclusion of the second day of a settlement conference before the Hon. Suszanne Segal, Magistrate Judge, the parties, orally on the record, agreed to the Settlement. The Settlement included the following terms:

1. Rahimi agreed to turn over the Material to the Trust, along with executed assignments of the copyrights in the Material to the Trust;

2. The Trust agreed to pay Rahimi $225,000.

3. Rahimi retained the limited right to use photographs and prints subject to the agreement for sale and display at fine art galleries.

4. This Court would retain jurisdiction to enforce the settlement.

5. The prevailing party in any proceeding for breach of the settlement agreement would be entitled to an award of his or its attorney fees and costs.

Rahimi refused to comply with the Settlement unless the Trust agreed to onerous new material terms. Therefore, on July 18, 2019, the Trust filed its motion to enforce settlement agreement and for $11,400 in attorney fees pursuant to the terms of the Agreement. [Doc 97] On February 25, 2020, this Court granted the motion in part and denied it in part. [Doc 103] The Court ordered the parties to comply with the Settlement and the Trust to lodge a proposed judgment consistent with the order. The Court denied the Trust's request for $11,400.00 in sanctions and attorney fees without prejudice, stating that it would reconsider the matter if Rahimi "engages in further efforts to delay or obstruct execution of the settlement agreement he entered into." (See Judgment, Doc 107, ¶ 7.)

On March 16, 2020, this Court entered the Judgment, which incorporated the terms of the Settlement and reserved jurisdiction to enforce its terms. [Doc 107, *id.*]

///

1. **Pre-Litigation Factual Background**

The factual background is set forth in detail in the Trust's portion of the amended joint appendix of disputed and undisputed facts re: defendant's motion for summary judgment filed herein on August 9, 2019 [DE 52-1], a copy of which is attached to the attached the Rothschild Decl. as Exhibit 13.

In summary, Shakur was an acclaimed hip hop performer, songwriter, actor and poet. Shakur's classic albums included *All Eyez on Me*, *The Don Killuminati: The 7 Day Theory*, and *2Pacalypse Now*. He starred in the major motion pictures *Poetic Justice*, *Gridlocked*, and others. Shakur was fatally shot on September 7, 1996, and died on September 13, 1996, and is recognized as one of the most iconic figures in late twentieth century popular music and culture. The Trust was established by Shakur's mother, the late Afeni Shakur, and is the owner of Shakur's property, including his rights in the Material that the Court ordered Rahimi to turn over to the Trust.

Rahimi was a novice realtor when in the mid-1990s he convinced his then-girlfriend, video producer Tracy Robinson ("Robinson") to let him help out on her video shoots. In Fall 1995 Shakur contacted Robinson, who had worked with him on videos before, about participating in film and video projects with him. Later, Shakur told Robinson he wanted to create behind-the-scenes photographs and video footage to use for a documentary (the "Documentary") about himself, along the lines of the 1991 film *Madonna: Truth or Dare*.

In or about Spring 1996, Shakur, Robinson and Rahimi, who had insinuated himself into the Documentary project, agreed to form a company, 24/7 Productions, Inc. ("24/7"), to work on the Documentary and other projects. They agreed that Shakur would own 60 percent of 24/7, and Shakur gave Robinson permission to share one-half of her 40 percent with Rahimi. Shakur superintended the work, determining when Rahimi and others could and could not shoot photographs and video. Rahimi, who had no expertise as a photographer or videographer, was, as he

described it, merely a "fly on the wall" capturing what Shakur chose to present. The value of the Material lies solely in Shakur's iconic status and public interest in him.

Starting in or about April 1996, Shakur gave Robinson and Rahimi access to Shakur's home, recording sessions and other locations to take photographs and shoot video of him, his group the Outlawz, and his friends and family, for the Documentary. Rahimi admitted that Robinson's production assistant and others, took many of the photographs, and others also shot much of the video footage.

A few days after Shakur's death Rahimi surreptitiously took the Photograph negatives and Video footage from Robinson's offices without Robinson's, or Shakur's representatives' or survivors', knowledge or permission. In October 1999, Rahimi purported to register copyrights in the Material, listing himself as "director & cameraman" and Robinson as "producer." However, until this litigation, Rahimi never repudiated Afeni Shakur's or the Trust's interest in the Material, and always acted as if they did have an interest in it.

### B. Rahimi's Violations of the Judgment

#### 1. Rahimi's Post-Judgment Sale of Material to a Third Party

In or about September 2023 third party Aaron Carey ("Carey"), a collector of music related items of historical value, received an inquiry from a person who identified himself as Alex Garcia asking if he was interested in purchasing unreleased videos, photographs and other material featuring Shakur, including master (i.e., first generation) audio and audiovisual recordings, followed up by a November 22, 2023, video conference during which "Alex" provided a list of the Videos Rahimi was offering for sale. (Declaration of Aaron Carey ("Carey Decl."), ¶ 3 and Ex. 1.)

On or about December 30, 2023, Carey received texts from "Alex" with links to two files, one labeled "Tupac Studio" and the other labeled "Real Love," both of which he downloaded. The "Tupac Studio" file was a video of Shakur and others in a recording studio, and the "Real Love" file is an audio recording of a version of

Shakur performing his song "Real Love." (Carey Decl., ¶ 4 and Exs. 2 and 3.) Exhibit 2 consists of copies of the December 30, 2023, texts. Exhibit 3 is a USB drive containing digital copies of those files, filed under seal.

On December 31, 2023, using a screen sharing application during a video call with Carey, Garcia navigated to a Google drive share folder bearing the initials "GR" which, when "Alex's" cursor hovered over it, became an email address that included the word "Gobione". The folder, the contents of which Carey downloaded, contained eleven videos of Tupac. (*Id.*, ¶ 6.)

On January 12, 2024, Carey had a video call with Rahimi. During the video call, Rahimi walked around what appeared to be a garage with several piles of master tapes, slides, DAT tapes, video tapes, and other media. As his camera scanned the material, Rahimi identified the items, which included master tapes of videos of Shakur recording sessions, audio recordings of Shakur and others discussing projects, alternate versions of Shakur releases, and other videos and recordings of Shakur. Writing on the material included Shakur's name, his group the "Outlawz," and song titles of Shakur recordings including "Hit 'Em Up," "All About You," "How Do You Want It," and others. (*Id.*, ¶¶ 9-10.)

On January 19, 2024, Rahimi emailed Carey with the subject line "tupac tape logs of footage.zip," with photographs of Material in his possession, logs of the Video still in his possession, and stating as follows:

> Hi Aaron:
>
> So here are some things to go through. First there's an old tape log from the ONE NATION/BTS footage that I found, which could be helpful to you.
>
> The only tapes that aren't masters are these, as they were duplicates from the original hi8's that the footage was shot on. There are 13 tapes here in total, so there may be footage that isn't available in quicktimes/digital versions. The only way I would be able to be sure would be to take these tapes as well as any other tapes I'm not sure about to a dub/post house and view them all. But for the sake of this email, I'm sending you everything as is.

>A set of slides that have never been seen before, and a set of six slides of images that were in my book.
>
>…
>
>There are multiple versions of some of the videos. What you will notice is that a lot of them have different dates on them, which means that an edit was made to the final video and it was re-outputted. Meaning there are versions of these videos that have never been seen before.
>
>The 4 dats at the bottom are marked and visible.
>
>…
>
>These lat few tapes I don't know what's on them and would again have to go to a post house to figure it out.
>
>That's it for now.
>
>Cheers,
>
>Gobi M. Rahimi

(*Id.*, ¶ 11, Ex. 6.)

On January 24, 2024, Rahimi agreed to sell Carey the items he had displayed during the January 12, 2024, video call and described in his January 19, 2024, email, for $42,000. Later that day, during another video call with Carey, Rahimi posted an invoice for the transaction dated January 24, 2024. (*Id.*, ¶ 12, Ex. 7.) Carey paid the $42,000 to Rahimi. The Trust reimbursed Carey. (*Id.*, ¶ 13); declaration of Molly Monjauze ("Monjauze Decl."), ¶ 4.)

**C.  Rahimi's Continuing Use of Material to Raise Funding for Personal Projects**

The Trust is aware of at least two instances in which Mr. Rahimi has used, or continued use, Photographs that belong to the Trust and are subject to the Judgment in promotional and fundraising material for his own projects.

First, a promotional brochure for a project called "Changes" that Rahimi sent Carey on January 6, 2024, features more than twenty of the photographs subject to the Judgment. (Carey Decl., ¶ 5 and Ex. 8.)

Second, a "business proposal" brochure entitled "Humble Seeds/B Noble

3982.066/3030675.1                              7

Media" uses Photographs that the Judgement ordered Rahimi to turn over to the to solicit $500,000 in funding for a "groundbreaking venture, packaging, selling and co-producing Tupac-inspired media" centered around Rahimi and a project called "Gobi Rahimi's redemption," with Rahimi identified on the penultimate page as "Creator." (Monjauze Decl., ¶ 3, Ex. 9.)   The brochure's last page states, "Embark on a transformative journey with B Noble Media, Humble Seed Productions, and Gobi Rahimi."  Photographs of Tupac that are subject to the Judgment appear all except one of the pages.  (In addition to violating the judgment, the brochure violates the Trust's publicity rights and suggests that Rahimi has the right to exploit scripts that Shakur wrote and in which Rahimi has no right, title or interest.)

### D. Rahimi's EBay.com Sales of Photographs Subject to the Judgment

On March 25, 2025, the Trust learned that six photographs and VHS videotape that could only have come from Rahimi (and that included an image of Rahimi with Tupac) were for sale for in excess of $1,000 each.  When counsel for the Trust notified the seller of the Judgment, the photographs were removed and replaced with the following legend:

> This listing was ended by the seller on Mon, 31 Mar at 2:37 PM because there was an error in the listing.

(Declaration of Stephen D. Rothschild ("Rothschild Dec."), ¶¶ 4-6 and Exs. 10 and 11.)

### III. RAHIMI IS IN CONTEMPT OF THE JUDGMENT

The elements of contempt, which must be established by clear and convincing evidence, are (1) the contemnor violated a court order, (2) the order was valid and lawful, (3) the order was clear, and (4) the contemnor had the ability to comply with the order.  *Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush*, 261 F3d 1037, 1047 (11th Cir. 2001); *Armstrong v. Executive Office of the President, Office of Admin.*, 1 F3d 1274, 1289 (DC Cir. 1993).

In this case the evidence against Rahimi is overwhelming and includes his

own written and oral communications. Rahimi has violated the Judgment by failing to turn over Material, selling it, and using it to raise money for his purported projects. The Judgment clearly was valid, lawful and clear, and Rahimi obviously had the ability to comply.

## IV. CONCLUSION

For each of the foregoing reasons, the Trust respectfully requests that this Court (1) issue an order to show cause why Rahimi should not be held in contempt and ordered to pay the sanctions requested herein, and (2) grant the Trust the other relief described herein.

DATED: April  , 2025           KING, HOLMES, PATERNO & SORIANO, LLP


By: _____
HOWARD E. KING
STEPHEN D. ROTHSCHILD
Attorneys for Plaintiff and Counter-Defendant Tom Whalley, Trustee of the Afeni Shakur Trust